IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JOHN RINEHART,<br><br>                Plaintiff,<br><br>       -against-<br><br>NATHAN SCHNEIDER, individually and in his capacity as a member of Colorado Solidarity Fund LLC,<br>COLORADO SOLIDARITY FUND LLC, a Colorado limited liability company, and<br>JOHN DOE, whose true name is unknown,<br><br>                Defendants. | Civil Action No.: 1:21-cv-797<br><br>**COMPLAINT** |

Plaintiff John Rinehart ("Mr. Rinehart"), through his undersigned attorneys, as and for his Complaint against Defendant Nathan Schneider ("Defendant Schneider"), Defendant Colorado Solidarity Fund LLC ("Defendant CSF") and Defendant "John Doe" ("Defendant Doe") (collectively "Defendants"), alleges as follows:

**STATEMENT OF CASE**

1. This is an action for money damages and corrective and injunctive relief due to Defendants' wrongful conduct to reemerge and release a defamatory letter, which was composed nearly five years earlier by certain industry competitors, attacking Mr. Rinehart personally and professionally. Defendants sent the defamatory letter in July 2020 to, inter alia, Mr. Rinehart's then-current business partner and prospective business partners of Mr. Rinehart.

2. Due to Defendants' wrongful conduct to reemerge and release the defamatory letter, Mr. Rinehart was forced out of the successful startup that he had co-founded, with Mr. Rinehart's then-business partner specifically citing Defendants' communications as the reason for the exclusion.

1

3. Accordingly, Mr. Rinehart brings this action for money damages and corrective and injunctive relief ordering Defendants to cease publication of the defamatory letter and to retract and remediate any previous communications and publications.

## PARTIES

4. Mr. Rinehart is an individual residing in New York.

5. Defendant Schneider is an individual who resides in Boulder, Colorado.

6. Defendant CSF is a limited liability company organized under the laws of the State of Colorado with a principal place of business at 901 Clarkson Street, Denver, CO 80218.

7. Defendant Doe is an individual that conspired with Defendant Schneider and Defendant CSF as described herein. Defendant Doe's identity is, at this point, unknown to Mr. Rinehart.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S. Code § 1332(a)(1).

9. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, since Plaintiff brings a claim under 15 U.S.C. § 1125(a), and pendent jurisdiction over the related state law claims asserted pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claim, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

10. This Court has personal jurisdiction over Defendant Schneider since Defendant Schneider resides and transacts business in Colorado.

11. This Court has personal jurisdiction over Defendant CSF since Defendant CSF resides and transacts business in Colorado.

12. This Court has personal jurisdiction over Defendant Doe since Defendant Doe either lives or transacts business in Colorado and/or committed a tortious act within Colorado.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391 (1) or (2) and in the alternative under 28 U.S.C. § 1391(b)(3).

## FACTS RELEVANT TO ALL CLAIMS

**Background**

14. Mr. Rinehart, a successful entrepreneur and an MBA graduate, has worked in the worker cooperative industry for the last decade, working and partnering with various public agencies and nonprofit organizations all over the country with the aim of advocating for and providing business development support to firms structured as worker cooperatives and other employee-owned business structures (the "co-op industry").

15. In one such roll, in 2014 and 2015, as a co-coordinator for the NYC Worker Cooperative Coalition ("NYCWCC"), Mr. Rinehart oversaw the production of deliverables to the New York City Council from a group of nearly a dozen non-profit organizations in the co-op industry who had received City Council funding in 2014 for fiscal year 2015. At this time, the NYCWCC was also in the process of applying for renewal funding, a process also co-led by Mr. Rinehart.

16. The production of deliverables to the City Council in 2014, as per the above-mentioned funding, fell substantially behind schedule due to certain organizations' underperformance, including that of Green Worker Cooperatives, whose board treasurer also

served as a member of the Grassroots Economic Organizing collective ("GEO"), an unincorporated collective based in New York, New York.

17. Mr. Rinehart, also in 2014, co-chaired the board of the Eastern Conference for Workplace Democracy ("ECWD"), which oversees a bi-annual worker co-op industry conference.

18. In order to expand the available offerings to worker-owned cooperative members, the ECWD board decided that GEO would no longer be the sole provider of content for the pre-conference for its 2015 conference, as had been the practice in previous years.

19. Following this decision, GEO became extremely uncooperative and was ultimately removed altogether as a provider of content for the pre-conference. (GEO had also been removed as a provider for the 2014 national worker cooperative conference, which was organized by a different organization, a decision that did not involve Mr. Rinehart.)

**The Defamatory Letter**

20. Not long after the decision regarding GEO as described above, and during the contentious process of preparing the NYCWCC's application for government funding renewal, in early 2015 an anonymous letter was authored attacking and defaming Mr. Rinehart both personally and professionally (the "Defamatory Letter").

21. Upon information and belief, the Defamatory Letter was authored by a certain member(s) of GEO in retaliation for what GEO considered Mr. Rinehart's role in GEO being removed from providing the 2015 conference content and in an attempt to preserve the status quo

4

government funding allocations, which they believed was under threat due to Mr. Rinehart's scrutinization of performance.[1]

22. In reality, the decision by ECWD to remove GEO as the sole content provider was made by the board, and the decision to remove them as a provider came after ECWD staff made significant efforts to work collaboratively with GEO, to no avail. Furthermore, the allocation of government funding was only under threat due to underperformance toward deliverables, which Mr. Rinehart oversaw.

23. The Defamatory Letter contains a number of misrepresentations and flat out lies about Mr. Rinehart personally and professionally.

24. The Defamatory Letter states that an investigation was conducted and a confidential report was created, both of which the Defamatory Letter appears to rely on in making its (false) statements.

25. The Defamatory Letter, however, does not reveal any details of the investigation, nor does it disclose the "confidential report" or any details thereof.

26. Upon information and belief, no actual investigation occurred and no actual confidential report was created.

27. The Defamatory Letter falsely and misleadingly specifically states that Mr. Rinehart engaged in:

   i. "sexual misconduct and sexual hostility"

   ii. "professional misconduct, autocratic behavior and sabotage"

---

[1] Upon information and belief, the person who authored the letter in late 2014 is Defendant Doe, who, as described herein, conspired and worked with Defendant Schneider in reemerging and releasing the defamatory letter in July 2020.

    iii.    "inappropriate sharing of internal co-op affairs"

    iv.    "insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City"

    v.    "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast."

28.    All of the above statements are false and/or misleading.

29.    The professional misconduct accusations in the Defamatory Letter could not be further from the truth, as evidenced by Mr. Rinehart's continued work, dedication, and contributions in the co-op industry over the last decade.

30.    The actual motivation behind the Defamatory Letter appears to shine through from a particularly telling sentence in the Defamatory Letter, which states:

> "In addition, one of the organizations this author is affiliated with, had a very disappointing experience trying to work with him in between 2013-2015 and none of them claim they are willing to work with him again or work on a project that they know includes him."

31.    Upon information and belief, the "organization" referenced above is GEO and the "disappointing experience" is GEO's removal from providing conference content in 2015 (which in reality was due to GEO's poor performance as a project partner).

32.    The Defamatory Letter was emailed around to various people and organizations in the co-op industry in 2015, eventually forcing Mr. Rinehart out of his then-current

6

positions.[2]

**Main Street Phoenix Worker Cooperative**

33. After continuing to work in various roles in the co-op industry after the unfortunate and malicious attacks on him in 2015, and after going back to graduate school to earn his MBA in Sustainable Business, Mr. Rinehart co-founded the Main Street Phoenix Worker Cooperative ("MSPWC") in March 2020.

34. MSPWC is a social enterprise, born out of the COVID pandemic, that seeks to assist restaurant employees in buying out their respective restaurants that were forced to close due to COVID, helping both the restaurants' former owners and its employees alike. MSPWC is based in Colorado and was created to focus on restaurants and employees in New York City and Colorado.

35. MSPWC was co-founded by Mr. Rinehart and non-party Jason Weiner ("Mr. Weiner"), an individual and lawyer whose law firm helped MSPWC do its initial investment raising and incorporation work.

36. Mr. Rinehart continued working on MSPWC throughout the pandemic, managing all aspects of MSPWC's work, and leading and overseeing MSPWC's New York City operations, including fundraising, investment efforts, as well as on the ground operations.

37. In large part due to Mr. Rinehart's persistent efforts, his credibility in the co-op industry, and his extensive professional networks, the idea and execution of MSPWC were well received within the co-op industry.

---

[2] This removal indeed prevented Mr. Rinehart from influencing further NYCWCC decisions on funding allocations, allowing the underperforming organizations, who share common leadership personnel with GEO, to garner more than $1M in funding from New York City Council allocations since Mr. Rinehart's dismissal.

7

38. Indeed, MSWPC had garnered over $70,000 in grant money in the first month of its formation, signed on a number of co-op and restaurant industry advisors, and had gotten significant mentions in the media, including in an article in the New York Times.

**Defendants Reemerge and Release Defamatory Letter;**
**Mr. Rinehart Forced Out of MSPWC**

39. Not long after this widespread recognition of Mr. Rinehart and MSPWC, and not long after Mr. Rinehart presented a "pitch" presentation to Defendant CSF, Defendants, upon information and belief, conspired with one another with the goal of getting Mr. Rinehart removed from MSPWC.

40. Defendant Schneider, a member of Defendant CSF, actively works in the co-op industry, performing various project management and contract work for different organizations, similar to Mr. Rinehart.

41. Indeed, Defendant Schneider and Mr. Rinehart compete for the same resources, clients, and work, including contract management work and paid authorships and articles focusing on the co-op industry.

42. Defendants were fully aware of Mr. Rinehart's role and position with MSPWC, as this had been highlighted in several publications and in the pitch presentation presented by Mr. Rinehart to Defendant CSF, which, upon information and belief, Defendants had viewed.

43. Upon information and belief, Defendants began planning their conspiracy to have Mr. Rinehart removed from MSPWC in early July 2020, and subsequently took several affirmative actions to accomplish this goal.

44. First, Defendant Schneider reached out and informed Mr. Weiner that Defendant Doe had made him (Defendant Schneider) aware of the Defamatory Letter and that he (Defendant Schneider) thought Mr. Weiner should view it.

8

45. Second, Defendant Schneider sent Mr. Weiner the Defamatory Letter.

46. Third, Defendant Schneider then "connected" Defendant Doe with Mr. Weiner.

47. Fourth, Defendant Doe then contacted Mr. Weiner, and upon information and belief, further defamed Mr. Rinehart and threatened MSPWC with bad publicity if Mr. Rinehart was not removed from the start-up.

48. Upon information and belief, Defendant Schneider and Defendant Doe then also released portions of the Defamatory Letter to others in the co-op industry.

49. At least one prospective business partner of Mr. Rinehart, Dazzle Limited Cooperative Association, who Mr. Rinehart had been in talks with about contracting together, also informed Mr. Rinehart that Defendant Schneider indeed contacted them regarding the Defamatory Letter.

50. Due to the allegations in the Defamatory Letter, and coupled with the bad press and reputational damage that MSPWC and Mr. Weiner's law firm could receive if Defendants continued publicizing the false and misleading Defamatory Letter, Mr. Wiener insisted that Mr. Rinehart leave MSPWC.

## FIRST CLAIM FOR RELIEF
### Violation of 15 U.S.C. § 1125(a)

51. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

52. The Defamatory Letter contains multiple misleading and false descriptions of fact and misrepresentations regarding Mr. Rinehart and his services in the co-op industry, including that Mr. Rinehart engaged in:

   i. "sexual misconduct and sexual hostility"
   ii. "professional misconduct, autocratic behavior and sabotage"

9

      iii.    "inappropriate sharing of internal co-op affairs"

      iv.    "insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City"

      v.    "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast"

53. Defendants communicated and publicized the Defamatory Letter to multiple people and organizations in the co-op industry, which is a small and somewhat insular community and industry.

54. The above publicization did cause confusion and mistake as to Mr. Rinehart and his services.

55. Mr. Rinehart has been forced out of his position with MSPWC and has been unable to procure work or funding in the co-op industry, to the benefit and profit of Defendants, both of whom compete with Mr. Rinehart for work, clients, resources, and funding within the co-op industry.

56. Mr. Rinehart has been damaged both monetarily and reputationally due to the above.

## SECOND CLAIM FOR RELIEF
### Defamation Per Se

57. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

58. The Defamatory Letter contains multiple defamatory statements that damage Mr. Rinehart professionally, in his business, trade, and profession, including that Mr. Rinehart engaged in:

      i. "sexual misconduct and sexual hostility"

      ii. "professional misconduct, autocratic behavior and sabotage"

      iii. "inappropriate sharing of internal co-op affairs"

      iv. "insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City"

      v. "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast."

59. The above statements are either literally false and/or are not pure opinions since they do not specify facts on which they may rely.

60. In particular, the Defamatory Letter states that it relies on an investigation and confidential report for its findings, yet the Defamatory Letter does not provide any details or facts surrounding the investigation or confidential report.

61. Upon information and belief, there never was an investigation or a confidential report.

62. The above statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Mr. Rinehart.

63. The statements were made of and concerning Mr. Rinehart and were so understood by those who read Defendants' publication of them.

64. Defendants had no privilege to assert the false and disparaging statements.

65. Due to the above, Mr. Rinehart has been directly damaged in his profession and trade.

## THIRD CLAIM FOR RELIEF
### Civil Conspiracy

66. Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

67. In July 2020, the Defendants conspired and agreed on a scheme to effect the removal of Mr. Rinehart from MSPWC.

68. Defendants took multiple affirmative actions to accomplish their scheme, including by initiating several communications with Mr. Weiner and defaming Mr. Rinehart and providing the Defamatory Letter to Mr. Weiner.

69. Upon information and belief, Defendant Doe further threatened Mr. Weiner with bad publicity and to "go public" with the Defamatory Letter should Mr. Rinehart not be removed from MSPWC.

70. Due to the above wrongful and unlawful conduct, Mr. Rinehart was removed from MSPWC and suffered other losses as well, including forfeiting his right to the first full time paid position with MSPWC, and damaging Mr. Rinehart's credibility and chances of further employment within the co-op industry.

71. The above wrongful and unlawful conduct by Defendants caused Mr. Rinehart's injuries directly, as Mr. Weiner cited the Defendants' communications as the reason for Mr. Rinehart's removal. Furthermore, other prospective business partners of Mr. Rinehart also specifically noted Defendant Schneider's communications regarding the Defamatory Letter as the reason they were hesitant to work with Mr. Rinehart.

## FOURTH CLAIM FOR RELIEF
### Tortious Interference with Contract

72. Mr. Rinehart had a valid contract to provide services for MSPWC, which contract included a provision entitling Mr. Rinehart to the first full-time paid position that MSPWC could offer once it received sufficient funding.

73. Defendants were aware of Mr. Rinehart's contract with MSPWC as he had been clearly identified as providing "strategic direction and overall project management" for MWPWC, and had "pitched" the MSPWC investment, which Defendants had either attended or had reviewed the recording of.

74. Defendants intentionally procured the breach of this contract by conspiring and taking the necessary steps as described herein to procure the removal of Mr. Rinehart from MSPWC.

75. MSPWC did breach its contract with Mr. Rinehart, as Mr. Rinehart was terminated from his position with MSPWC, and Mr. Rinehart was not first considered for a full-time, paid position which did become available at MSPWC.

76. Mr. Weiner and MSPWC specifically noted Defendants communications of the Defamatory Letter as their reason for terminating the relationship with Mr. Rinehart and not providing him the position he was contractually entitled to.

77. Due to the above, Mr. Rinehart has been damaged, inter alia, monetarily by not receiving the position and its accompanying salary.

## PRAYER FOR RELIEF

78. **WHEREFORE**, by reason of the acts and circumstances alleged herein, Mr. Rinehart seeks relief from this Court as follows:

    a. Judgment on each of the claims set forth above;

    b. An award of compensatory damages according to proof at trial, but in an amount no less than $500,000.00, as well as punitive and exemplary damages where authorized, including from the Lanham Act and common law, due to Defendants' willful and wanton behavior;

    c. An order enjoining Defendants and those in active concert with Defendants from further communicating or publicizing the Defamatory Letter;

    d. An order directing Defendants to delete and destroy the Defamatory Letter and issue a retraction of the Defamatory Letter to any individuals or entities that Defendants released or communicated about the Defamatory Letter to;

    e. Prejudgment and post-judgment interest at the applicable rate; and

    f. Such other and further relief the Court deems proper and just.

## **DEMAND FOR TRIAL BY JURY**

Please take notice that Mr. Rinehart hereby demands trial by jury for all issues so triable

Dated: Brooklyn, New York
March 18, 2021

    Respectfully Submitted:

    **LEWIS & LIN, LLC**

    /s/ Michael D. Cilento
    David D. Lin, Esq.
    Michael D. Cilento, Esq.
    81 Prospect Street, Suite 8001
    Brooklyn, NY 11201
    David@iLawco.com
    Michael@iLawco.com
    Tel: (718) 243-9323
    Fax: (718) 243-9326

    *Attorneys for Mr. Rinehart*