**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| JOHN RINEHART, | Civil Action No.: 1:21-cv-797-WJM |
| Plaintiff, | |
| -against- | **FIRST AMENDED COMPLAINT** |
| NATHAN SCHNEIDER, individually and in his capacity as a member of Colorado Solidarity Fund LLC, COLORADO SOLIDARITY FUND LLC, a Colorado limited liability company, and JESSICA GORDAN NEMBHARD, an individual | |
| Defendants. | |

Plaintiff John Rinehart ("Mr. Rinehart"), through his undersigned attorneys, as and for his First Amended Complaint against Defendant Nathan Schneider ("Defendant Schneider"), Defendant Colorado Solidarity Fund LLC ("Defendant CSF") and Defendant Jessica Gordan Nembhard ("Defendant Nembhard") (collectively "Defendants"), alleges as follows:

**INTRODUCTION AND SUMMARY**

1.    This action seeks to remedy Defendants' wrongful scheme in July 2020 to force Mr. Rinehart's removal from the successful startup that he had recently co-founded ("MSPWC" as detailed infra). Defendants' conduct consisted of several calculated actions, including, at the plan's core, reemerging and releasing a defamatory letter concerning Mr. Rinehart to the co-founder of MSPWC, nonparty Jason Weiner.

2.    Defendant Nembhard, a somewhat-notorious participant in the co-op industry, created and successfully used the defamatory letter in 2015 to force Mr. Rinehart out of his then-current positions in the co-op industry, to her advantage, and she has done so now again – this

1

time conspiring with Defendant Schneider, a member of Defendant CSF, who at the time was in talks to invest in and partner with MSPWC.

3.       After priming Mr. Weiner with the false accusations in the defamatory letter, Defendants then set up individual meetings with Mr. Weiner to further their plan to oust Mr. Rinehart. First, Defendant Schneider met with Mr. Weiner to discuss any potential partnership between Defendant CSF and MSPWC in light of the "unfortunate situation" (which of course was entirely created by Defendants themselves). Then, to deliver the final blow, Defendant Nembhard, feigning reluctance, finally meets with Mr. Weiner to further discuss (and defame) Mr. Rinehart and, upon information and belief, threatens to "go public" with the defamatory letter should Mr. Rinehart not be removed from MSPWC.

4.       Less than a month later, Mr. Rinehart was no longer associated with MSPWC. Forced out by Mr. Weiner, who feared for his and MSPWC's reputation and business if they disobeyed Defendants.

5.       This time, Mr. Rinehart is fighting back. Mr. Rinehart now brings this action for money damages and corrective and injunctive relief ordering Defendants to cease publication of the defamatory letter and to retract and remediate any previous communications and publications.

## PARTIES

6.       Mr. Rinehart is an individual residing in New York.

7.       Defendant Schneider is an individual residing in Boulder, CO.

8.       Defendant CSF is a limited liability company organized under the laws of the State of Colorado with a principal place of business in Denver, CO.

9.      Defendant Nembhard is an individual residing, upon information and belief, in Washington, DC.

## JURISDICTION AND VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S. Code § 1332(a)(1).

11.     This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, since Plaintiff brings a claim under 15 U.S.C. § 1125(a), and pendent jurisdiction over the related state law claims asserted pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claim, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

12.     This Court has personal jurisdiction over Defendant Schneider since Defendant Schneider resides and transacts business in Colorado.

13.     This Court has personal jurisdiction over Defendant CSF since Defendant CSF resides and transacts business in Colorado.

14.     This Court has personal jurisdiction over Defendant Nembhard since Defendant Nembhard transacts business in Colorado and committed a tortious act within Colorado.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 (1) or (2) and in the alternative under 28 U.S.C. § 1391(b)(3).

## FACTS RELEVANT TO ALL CLAIMS

### Background of Mr. Rinehart and the Co-op Industry

16.     Mr. Rinehart, a successful entrepreneur and an MBA graduate, has worked in the worker cooperative industry for the last decade, working and partnering with various public

agencies and nonprofit organizations all over the country with the aim of advocating for and providing business development support to firms structured as worker cooperatives and other employee-owned business structures (the "co-op industry").

17.     In one such roll, in 2014 and 2015, as a co-coordinator for the NYC Worker Cooperative Coalition ("NYCWCC"), Mr. Rinehart oversaw the production of deliverables to the New York City Council from a group of nearly a dozen non-profit organizations in the co-op industry who had received City Council funding in 2014 for fiscal year 2015.

18.     At this time, the NYCWCC was also in the process of applying for renewal funding, a process also co-led by Mr. Rinehart.

19.     The production of deliverables to the New York City Council, required from the funding, fell substantially behind schedule in 2014, due to certain organizations' underperformance, including that of Green Worker Cooperatives, whose board treasurer, Defendant Nembhard, also served as a member of the Grassroots Economic Organizing collective ("GEO"), an unincorporated collective based in New York, New York.

20.     Mr. Rinehart, also in 2014, co-chaired the board of the Eastern Conference for Workplace Democracy ("ECWD"), which oversees a bi-annual worker co-op industry conference.

21.     In order to expand the available offerings to worker-owned cooperative members, the ECWD board decided that GEO would no longer be the sole provider of content for the pre-conference for its 2015 conference, as had been the practice in previous years.

22.     Following this decision, GEO became extremely uncooperative and was ultimately removed altogether as a provider of content for the pre-conference. (GEO had also

been removed as a provider for the 2014 national worker cooperative conference, which was

organized by a different organization, a decision that did not involve Mr. Rinehart.)

**Defendant Nembhard Creates the Defamatory Letter in 2015**

23.     Not long after the decision regarding GEO as described above, and during the

contentious process of preparing the NYCWCC's application for government funding renewal,

in early 2015 an anonymous letter was authored attacking and defaming Mr. Rinehart both

personally and professionally (the "Defamatory Letter").

24.     Upon information and belief, the Defamatory Letter was created by Defendant

Nembhard.

25.     Upon information and belief, Defendant Nembhard composed the Defamatory

Letter in retaliation for what she considered Mr. Rinehart's role in GEO being removed from

providing the 2015 conference content, and in an attempt to preserve the status quo government

funding allocations, which she believed was under threat due to Mr. Rinehart's scrutinization of

performance.

26.     In reality, the decision by ECWD to remove GEO as the sole content provider

was made by the board, and the decision to remove them as a provider came after ECWD staff

made significant efforts to work collaboratively with GEO, to no avail.

27.      Furthermore, the allocation of government funding was only under threat due to

underperformance toward deliverables, which Mr. Rinehart oversaw.

28.     The Defamatory Letter is a juxtaposition of two blocks of text that are contained

in a single email thread composition. The first block of text is a first-person statement detailing a

single author's "part" in "putting together a 'Fair Witness' Report" concerning Mr. Rinehart's

"behavior in the worker co-op movement." It states that an investigation was conducted,

including "discussions with about 20 people," and that a "confidential report" was created. The statement says that the findings of the report include that Mr. Rinehart engaged in:

> sexual misconduct and sexual hostility; bullying; professional misconduct, autocratic behavior and sabotage; inappropriate sharing of internal co-op affairs; mean-spirited gossiping; insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City; and deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast.

29.     The Defamatory Letter does not, however, reveal any actual details of the investigation, nor does it disclose the "confidential report" itself.

30.     Upon information and belief, no investigation occurred and no confidential report was created.

31.     Upon information and belief, these were simply lies that the author (Defendant Nembhard) told to facilitate her defaming of Mr. Rinehart, who she had a vendetta against for the reasons alluded to herein.

32.     One of the actual motivations behind the Defamatory Letter can be gleaned from the concluding remarks of the first portion of the statement, which states:

> In addition, one of the organizations this author is affiliated with, had a very disappointing experience trying to work with him in between 2013-2015 and none of them claim they are willing to work with him again or work on a project that they know includes him.

33.     Upon information and belief, the "organization" referenced above is GEO and the "disappointing experience" is GEO's removal from providing conference content in 2015 (which in reality was due to GEO's poor performance as a project partner).

34.     The second block of text of the Defamatory Letter is copy and pasted from a statement put out years earlier by a group known as the "Ashville Accountability Krewe," and it details the group's interactions with Mr. Rinehart's concerning an alleged incident in 2011.

35.     While, upon information and belief, the statement from the Ashville Accountability Krewe was not part of any "investigation" or "confidential report" that the Defamatory Letter relies on, Defendant Nembhard included it to further deceive readers into thinking her statements were true.

36.     The Defamatory Letter itself, as a juxtaposition of the two bodies of text is defamatory and misleading in its entirety.

37.     Furthermore, there are specific statements and language that are falsifiable and defamatory, including specifically stating that Mr. Rinehart engaged in:

   i.    "sexual misconduct and sexual hostility"

   ii.   "professional misconduct, autocratic behavior and sabotage"

   iii.  "inappropriate sharing of internal co-op affairs"

   iv.   "insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City"

   v.    "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast."

38.     All of the above statements are false and/or misleading.

39.     The personal accusations are untrue, and the professional misconduct accusations could not be any further from the truth, as evidenced by Mr. Rinehart's continued work, dedication, and contributions in the co-op industry over the last decade.

40.     In 2015, the Defamatory Letter was emailed around to various people and organizations in the co-op industry, eventually forcing Mr. Rinehart out of his then-current positions.[1]

**Mr. Rinehart Co-founds Main Street Phoenix Worker Cooperative**

41.     After continuing to work in various roles in the co-op industry after the unfortunate and malicious attacks on him in 2015, and after going back to graduate school to earn his MBA in Sustainable Business, Mr. Rinehart co-founded the Main Street Phoenix Worker Cooperative ("MSPWC") in March 2020.

42.     MSPWC is a social enterprise, born out of the COVID pandemic, that seeks to assist restaurant employees in buying out their respective restaurants that were forced to close due to COVID, helping both the restaurants' former owners and its employees alike. MSPWC is based in Colorado and was created to focus on restaurants and employees in New York City and Colorado.

43.     MSPWC was co-founded by Mr. Rinehart and non-party Jason Weiner ("Mr. Weiner"), an individual and lawyer whose law firm helped MSPWC do its initial investment raising and incorporation work.

---

[1] This removal indeed prevented Mr. Rinehart from influencing further NYCWCC decisions on funding allocations, allowing the underperforming organizations, who share common leadership personnel with GEO, including Defendant Nembhard, to garner more than $1M in funding from New York City Council allocations since Mr. Rinehart's dismissal.

44.     Mr. Rinehart continued working on MSPWC throughout the pandemic, managing all aspects of MSPWC's work, and leading and overseeing MSPWC's operations, including fundraising, investment efforts, as well as on the ground operations.

45.     In large part due to Mr. Rinehart's persistent efforts, his credibility in the co-op industry, and his extensive professional networks, the idea and execution of MSPWC were well received within the co-op industry.

46.     Indeed, MSWPC had garnered over $70,000 in grant money in the first month of its formation, signed on a number of co-op and restaurant industry advisors, and had gotten significant mentions in the media, including in an article in the New York Times.

**Defendants Reemerge and Release the Defamatory Letter;**
**Mr. Rinehart is Forced Out of MSPWC**

47.     As part of his persistent efforts to grow and build MSPWC, Mr. Rinehart presented a "pitch" presentation to Defendant CSF in Colorado in May 2020. The pitch was an attempt to persuade Defendant CSF, an investment fund focused on social enterprises, to invest in and partner with MSPWC.

48.     Upon information and belief, the widespread recognition that MSPWC and Mr. Rinehart began receiving, along with the pitch presentation that Mr. Rinehart gave to Defendant CSF, were the triggers for Defendant Nembhard to again use her popularity and her creation of the Defamatory Letter to seek Mr. Rinehart's removal from his position and the industry.

49.     And that she did, this time by utilizing Defendant Schneider and his membership interest in Defendant CSF, as well as, upon information and belief, other members of CSF, to facilitate her scheme.

50.     First, upon information and belief, Defendant Nembhard reached out to Defendant Schneider, sent him the defamatory letter, explainer her vendetta against Mr. Rinehart and

persuaded Mr. Schneider that it would be to her and his benefit if Mr. Rinehart were removed from MSPWC.

51. Second, Defendant Schneider forwarded the Defamatory Letter to Mr. Weiner, and included additional comments from Defendant Nembhard to tell Mr. Weiner. Defendant Schneider then facilitated a meeting with Mr. Weiner and, upon information and belief, at least one other Defendant CSF member, to further discuss the situation; namely, the status of any potential partnership between Defendant CSF and MSPWC in light of the "unfortunate situation" (which of course was entirely created by Defendants themselves).

52. Upon information and belief, Mr. Schneider was acting in his capacity as a member of Defendant CSF (which is a member-managed LLC) when he met with Defendant Schneider to discuss the "CSF <> Phoenix update," which was the subject line of the emails between Defendant Schneider and Mr. Weiner to set the meeting (Phoenix referring to MSPWC.)

53. Upon information and belief, nonparty and individual Matt Noyes also participated in this meeting with Defendant Schneider and Mr. Weiner. Mr. Noyes's significance and role has not yet been discovered, but he is believed to be a member of both Defendant CSF and GEO.

54. Third, Defendant Schneider connected and introduced Defendant Nembhard to Mr. Weiner through email and insisted the two of them set a meeting, even though Defendant Nembhard was very busy, to further discuss Mr. Rinehart and his role at MSPWC.

55. Fourth, Defendant Nembhard did then meet with Mr. Weiner, and, upon information and belief, further defamed Mr. Rinehart and threatened to "go public" with the Defamatory Letter should Mr. Rinehart not be removed from MSPWC.

10

56.     Fifth, upon information and belief, Defendant Schneider and Defendant Nembhard then also released portions of the Defamatory Letter to others in the co-op industry.

57.     At least one prospective business partner of Mr. Rinehart, Dazzle Limited Cooperative Association, who Mr. Rinehart had been in talks with about contracting together, also informed Mr. Rinehart that Defendant Schneider contacted them regarding the Defamatory Letter.

58.     Due to the above, Mr. Wiener insisted that Mr. Rinehart leave MSPWC, and informed Mr. Rinehart that he would not be receiving the paid position that was promised under his contract with MSPWC.

## FIRST CLAIM FOR RELIEF
## Violation of 15 U.S.C. § 1125(a)

59.     Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

60.     Defendant Schneider, a member of Defendant CSF, actively works in the co-op industry, performing various project management and contract work for different organizations, similar to Mr. Rinehart.

61.     Defendant Schneider and Mr. Rinehart compete for the same resources, clients, and work, including contract management work and paid authorships and articles focusing on the co-op industry.

62.     Defendant Nembhard is a contributor, officer, and member of various organizations in the co-industry, including GEO, the Green Worker Cooperatives, and the Ecological Democracy Institute of America.

63.     Defendant Nembhard and her organizations compete with Mr. Rinehart and MSPWC for resources, funding, and clients in the co-op industry, which is a small and somewhat insular community and industry.

64.     The Defamatory Letter authored by Defendant Nembhard and publicized by all Defendants contains multiple misleading and false descriptions of fact and misrepresentations regarding Mr. Rinehart and his services in the co-op industry, including those statements as detailed in paragraph 37 herein.

65.     Defendants communicated and publicized the Defamatory Letter to multiple people and organizations in the co-op industry.

66.     The above publicization misrepresented Mr. Rinehart and the nature of his services in the co-op industry.

67.     Mr. Rinehart has been forced out of his position with MSPWC and has been unable to procure work or funding in the co-op industry, to the benefit and profit of Defendants, all of whom compete with Mr. Rinehart for work, clients, resources, and funding within the co-op industry.

68.     The resources, fundraising dollars, and partnerships in the co-op industry that Mr. Rinehart and MSPWC were in the process of securing can now be secured by Defendants.

69.     Mr. Rinehart has been damaged both monetarily and reputationally due to the above.

## SECOND CLAIM FOR RELIEF
### Defamation Per Se

70.     Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

71.     All Defendants published and communicated the Defamatory Letter to third parties.

72.     The Defamatory Letter contains multiple defamatory statements that damage Mr. Rinehart professionally, in his business, trade, and profession, including that Mr. Rinehart engaged in:

    i.    "sexual misconduct and sexual hostility"

    ii.    "professional misconduct, autocratic behavior and sabotage"

    iii.    "inappropriate sharing of internal co-op affairs"

    iv.    "insensitive and racially disrespectful comments to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City"

    v.    "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast."

73.     The above statements are either literally false and/or are not pure opinions since they do not specify facts on which they may rely.

74.     In particular, the Defamatory Letter states that it relies on an investigation and confidential report for its findings, yet the Defamatory Letter does not provide any details or facts surrounding the investigation or confidential report.

75.     Upon information and belief, there never was an investigation or a confidential report.

76.     The above statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Mr. Rinehart.

77.     The statements were made of and concerning Mr. Rinehart and were so understood by those who read Defendants' publication of them.

78.     Defendants had no privilege to assert the false and disparaging statements.

79.     Due to the above, Mr. Rinehart has been directly damaged in his profession and trade.

### THIRD CLAIM FOR RELIEF
### Civil Conspiracy

80.     Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

81.     In July 2020, Defendants conspired and agreed on a scheme to effect the removal of Mr. Rinehart from MSPWC.

82.     Defendants took multiple affirmative actions to accomplish their scheme, including by initiating several communications and meetings with Mr. Weiner, defaming Mr. Rinehart, and providing the Defamatory Letter to Mr. Weiner.

83.     Upon information and belief, Defendant Nembhard further threatened Mr. Weiner with bad publicity and to "go public" with the Defamatory Letter should Mr. Rinehart not be removed from MSPWC.

84.     Due to the above wrongful and unlawful conduct, Mr. Rinehart was removed from MSPWC and suffered other losses as well, including forfeiting his right to the first full time paid position with MSPWC, and damaging Mr. Rinehart's credibility and chances of further employment within the co-op industry.

85.     The above wrongful and unlawful conduct by Defendants caused Mr. Rinehart's injuries directly, as Mr. Weiner cited the Defendants' communications as the reason for Mr. Rinehart's removal. Furthermore, other prospective business partners of Mr. Rinehart also

14

specifically noted Defendant Schneider's communications regarding the Defamatory Letter as the reason they were hesitant to work with Mr. Rinehart.

## FOURTH CLAIM FOR RELIEF
### Tortious Interference with Contract

86.     Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

87.     Mr. Rinehart had a valid contract to provide services for MSPWC, which contract included a provision entitling Mr. Rinehart to the first full-time paid position that MSPWC could offer once it received sufficient funding.

88.     Defendants were fully aware of Mr. Rinehart's role and position with MSPWC, as this had been highlighted in several publications and in the pitch presentation presented by Mr. Rinehart to Defendant CSF, which, upon information and belief, Defendants had viewed.

89.     Defendants wrongful scheme as detailed herein was perpetuated in order to intentionally procure the breach of this contract and have Mr. Rinehart removed from MSPWC.

90.     MSPWC did breach its contract with Mr. Rinehart, as Mr. Rinehart was terminated from his position with MSPWC, and Mr. Rinehart was not first considered for a full-time, paid position which did become available at MSPWC.

91.     Mr. Weiner and MSPWC specifically noted Defendants' communications of the Defamatory Letter as their reason for terminating the relationship with Mr. Rinehart and not providing him the position he was contractually entitled to.

92.     Due to the above, Mr. Rinehart has been damaged, inter alia, monetarily by not receiving the position and its accompanying salary.

## FIFTH CLAIM FOR RELIEF
## <u>Tortious Interference with Prospective Business Advantage / Economic Relations</u>

93.     Mr. Rinehart repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

94.     Defendants were fully aware of Mr. Rinehart's role and position with MSPWC, as this had been highlighted in several publications and in the pitch presentation presented by Mr. Rinehart to Defendant CSF, which, upon information and belief, Defendants had viewed.

95.     Defendants wrongful scheme as detailed herein was perpetuated in order to intentionally cause Mr. Weiner and MSPWC to stop doing business with Mr. Rinehart and remove him from the Company.

96.     Defendants' scheme worked, and it did cause Mr. Weiner and MSPWC to cease doing business with Mr. Rinehart; Mr. Rinehart was forced to leave the company, and he did not receive the first fulltime paid position, which he was promised and which he was in line, and which did subsequently become available.

97.     Mr. Weiner and MSPWC specifically noted the Defamatory Letter and Defendants' communications as the reason for terminating the relationship with Mr. Rinehart and not providing him the fulltime paid position.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, by reason of the acts and circumstances alleged herein, Mr. Rinehart seeks relief from this Court as follows:

a.   Judgment on each of the claims set forth above;

b.   An award of compensatory damages according to proof at trial, but in an amount no less than $500,000.00, as well as punitive and exemplary damages where

authorized, including from the Lanham Act and common law, due to Defendants'
willful and wanton behavior;

c.   An order enjoining Defendants and those in active concert with Defendants from
further communicating or publicizing the Defamatory Letter;

d.   An order directing Defendants to delete and destroy the Defamatory Letter and
issue a retraction of the Defamatory Letter to any individuals or entities that
Defendants released or communicated about the Defamatory Letter to;

e.   Prejudgment and post-judgment interest at the applicable rate; and

f.   Such other and further relief the Court deems proper and just.

## DEMAND FOR TRIAL BY JURY

Please take notice that Mr. Rinehart hereby demands trial by jury for all issues so triable

Dated: Brooklyn, New York
       June 8, 2021

Respectfully Submitted:

**LEWIS & LIN, LLC**

David D. Lin, Esq.
Michael D. Cilento, Esq.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Michael@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Mr. Rinehart*

17