IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:21-cv-797-WJM-SKC

JOHN RINEHART,

    Plaintiff,

v.

NATHAN SCHNEIDER, individually and in his capacity as a member of Colorado Solidarity Fund LLC,
COLORADO SOLIDARITY FUND LLC, a Colorado limited liability company, and
JOHN DOE, whose true name is unknown,

    Defendants.

---

### AMENDED MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Defendant Nathan Schneider, by and through his attorneys, Brian D. Kennedy, Kevin G. Ripplinger and the law firm of Paterson Ripplinger, P.C., submits the following Amended Motion to Dismiss, seeking dismissal of Plaintiff's claims against Defendant Schneider pursuant to Fed.R.Civ.P. 12(b)(6).  Defendant Schneider provides:

**Certification of Conferral:**

Undersigned counsel certifies that he has conferred with Plaintiff's and CSF's counsel concerning the relief requested herein.  Plaintiff will oppose the Motion.  CSF does not oppose the Motion.

## I. INTRODUCTION

As set forth in the First Amended Complaint, in mid-2020 Plaintiff was attempting to solicit funding and to promote a Colorado start-up, touting his credibility and network of contacts in the cooperative industry. He has now sued Defendant Schneider – a member of one of the entities he

1

sought funding from; a board member of the parent company of another business he sought to contract with; and a journalist and academic with a relationship to the owner of the business Plaintiff was seeking to promote -- based upon Mr. Schneider being the recipient of information from a third-party to the effect that Plaintiff had been accused of serious misconduct and become a pariah among organizations with which he previously worked.

The First Amended Complaint, like the pleading it replaces, is devoid of merit and fails to state a plausible claim. Mr. Schneider merely received information pertaining to a potential reputational risk that warranted further inquiry and placed the source of that information in touch with the owner of the potentially affected business. Plaintiff's allegations in no way state a claim for a Lanham Act violation, defamation, tortious interference with contract, tortious interference with prospective business advantage, or conspiracy. Plaintiff is not accusing Mr. Schneider of making a false statement of fact and is instead complaining of communications that are – among other things—well within the scope of common interest privilege.  Plaintiff's First Complaint does not, therefore, state a claim for which relief can be granted, and it should be dismissed.

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that he "has worked in the worker cooperative industry for the last decade," but in or around 2014 or 2015 developed a contentious relationship with various individuals or groups associated with an "unincorporated collective" in New York City known as Grassroots Economic Organizing ("GEO"), which he blamed for certain work he was "overseeing" falling "substantially behind schedule." (First Amended Complaint, **Exhibit "A,"** ¶¶ 16-17). Plaintiff claims he sought, effectively, to have this group terminated as a content provider for a conference, in response to which one or more people in the "collective," believed by Plaintiff to be Defendant Nembhard, authored a what he claims was a defamatory letter, which then led to Plaintiff's loss of

employment. (**Exhibit "A,"** ¶ 19 - 40). Specifically, Plaintiff claims that this "Letter" contained allegations of a "disappointing experience" involving "sexual misconduct," "professional misconduct," and "racially disrespectful comments." (**Exhibit "A,"** ¶¶ 28, 32).

After his problems in 2015, Plaintiff went back to school, earned an MBA, and then in or around March 2020 "co-founded" an organization "based in Colorado" known as the Main Street Phoenix Workers Cooperative or Main Street Phoenix Project ("MSP"), which was intended to facilitate distressed restaurants rising from the ashes of Covid-19 as employee-owned cooperatives. (**Exhibit "A,"** ¶¶ 41-43). One of the other "co-founders" and, upon information and belief, the controlling principal of MSP was "non-party Jason Weiner," a Colorado lawyer who incorporated the entity and helped it "do its initial investment raising." (**Exhibit "A,"** ¶ 43). Plaintiff claims that his contribution to MSP consisted of "managing all aspects of MSPWC's work, and leading and overseeing MSPWC's New York City operations, including fundraising, investment efforts, as well as on the ground operations," and that he had an agreement with MSP through which he would receive "the first full-time paid position" available. (**Exhibit "A,"** ¶¶ 44, 58, 87).

Plaintiff claims that Mr. Schneider is a member of co-defendant Colorado Solidarity Fund, to which Plaintiff made a "pitch" in connection with his fundraising efforts. (**Exhibit "A,"** ¶¶ 47, 49, 52). He claims that Mr. Schneider received the defamatory letter, told Mr. Weiner about its existence, shared it with Mr. Weiner and connected Mr. Weiner with Defendant Nembhard. (**Exhibit "A,"** ¶¶ 50-54). Plaintiff also claims Mr. Schneider "released portions" of this Letter to "others in the co-op industry," including an entity known as Dazzle Limited Cooperative Association, with which Plaintiff claims to have "been in talks with about contracting." (**Exhibit "A,"** ¶¶ 56-57).

Because of the reputational damage that [MSP] and Mr. Weiner's law firm could receive, "Mr. Weiner insisted that Rinehart leave" the start-up. (Complaint, **Exhibit "A,"** ¶ 55, 58). Plaintiff also alleges unspecified reputational damages, damages in his profession and trade and monetary damages. (Complaint, **Exhibit "A,"** ¶¶ 67, 69, 79).

In addition to the above claims, Plaintiff asserts that there was some form of conspiracy among Defendants. Specifically, he alleges Mr. Schneider, CSF and Nembhard had the goal of "effect[ing] the removal of Mr. Rinehart from MSPWC." (**Exhibit "A," ¶ 81**). Plaintiff does not describe the contours of this agreement or any unlawful action. The only acts related to the alleged conspiracy he describes are the communications described above and his belief that Defendant Nembhard "threatened Mr. Weiner with bad publicity and to 'go public' with the [Letter] should Mr. Rinehart not be removed from MSPWC." (**Exhibit "A," ¶ 83**).

## III. ARGUMENT AND AUTHORITY

### A. Standard Under Fed.R.Civ. 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and thus to survive a motion to dismiss a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotation marks omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

4

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not sufficient. *Id.* "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). The Court should disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim.  *Brooks*, 985 F.3d at 1281.  The Court's plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial "experience and common sense." *Id.*; *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Where questions of intent are at issue, the complaint must contain "factual allegation sufficient to plausibly suggest . . . state of mind." *Iqbal*, 556 U.S. at 678.

**B. First Claim for Relief –Plaintiff Fails to State a Plausible Claim Under the Lanham Act**

The Lanham Act addresses consumer fraud.  The facts and circumstances alleged in this First Amended Complaint have nothing whatsoever to do with consumer fraud. Plaintiff is discussing fundraising for a start-up entity or, at most, business-to-business transactions. The parties are not competitors and there are no non-conclusory factual allegations to support such a Lanham Act claim; and the fact that allegations were made against Plaintiff is, on its face, not a misrepresentation within the contemplation of the Act.

The Lanham Act's unfair competition provision, 15 U.S.C, § 1125(a), provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

>misleading description of fact, or false or misleading representation of fact, which—
>
>>(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Congress has described the purpose of the Act. 15 U.S.C. § 1127, provides:

>"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations."

The First Amended Complaint does not specify which subsection of the Act Plaintiff believes applies. Section (1)(a) provides protection for unregistered trademarks from unfair competition and false designation of origin, such as in case of knock-off products. *See generally Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 378 (S.D.N.Y. 2008). "[T]he same legal test applies to claims for trademark infringement and false designation under the Lanham Act." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 283 (S.D.N.Y. 2018) (collecting cases). "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v.*

*Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004). The facts and circumstances complained of are not remotely similar to the types of claims addressed by this Section.

To the extent Plaintiff attempts to invoke Section (1)(b), this provision relates to false statements in connection with advertising and promotion of goods and service, but Plaintiff is not complaining regarding a statement made in connection with commercial advertising or promotion. To constitute commercial advertising or promotion, a "statement must be (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services;… (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public," and, possibly, that (4) the parties are commercial competitors. *Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003)(internal quotation marks omitted) citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) and *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994). *See also Johnson & Johnson v. Smithkline*, 960 F.2d 294, 297 (2d Cir. 1992); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir.2000). None of these elements are present here. The First Amended Complaint does not discuss commercial speech; the speech at issue is not directed towards consumers or the purchasing public; the First Amended Complaint is not discussing consumer goods or services; and the parties are not commercial competitors. Indeed, Mr. Schneider is sued in his personal capacity.

The Tenth Circuit has held that "to have standing for a false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 873 (10th Cir.1995). "[H]arm[ ] to the plaintiff's ability to compete with the defendant" constitutes such an injury. *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir.1995). There is no way to read Plaintiff's First Amended Complaint as plausibly alleging either that Mr.

7

Schneider is a business competitor or that his alleged conduct harms Plaintiff's ability to compete with him.  Indeed, Plaintiff only states that he and Mr. Schneider are both active in the co-op industry and that, like any two people active in an industry or political activity, they use some of the same resources.  (**Exhibit "A,"** ¶¶ 60-61).  That does not make them business competitors within the meaning of the Lanham Act.  Plaintiff's Complaint simply does not state a claim under the Act, and his First Claim for Relief should be dismissed.

### C. Second Claim for Relief –Plaintiff Fails to State a Plausible Claim for Defamation

"In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *McIntyre v. Jones,* 194 P.3d 519, 523-524 (Colo.App.2008) citing *Williams v. Dist. Court,* 866 P.2d 908, 911 n. 4 (Colo.1993); *see also Rosner v. Amazon.com*, 132 A.D.3d 835, 836–37 (2d Dept. 2015)(New York law is substantially identical).  Substantial truth is an absolute defense to a defamation claim. *Gomba v. McLaughlin*, 180 Colo. 232, 235, 504 P.2d 337, 338 (1972).  In determining whether a challenged statement is substantially true, the inquiry should focus on how an average reader would understand and react to the statement. "The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Anderson v. Cramlet*, 789 F.2d 840, 843 (10th Cir.1986) (applying Colorado law); see also *Greenberg v. Spitzer*, 155 A.D.3d 27, 41 (2d Dept. 2017)(New York Law is the same).

Here, based upon the statements contained in the First Amended Complaint, allegations were, in fact, made against Plaintiff by Defendant Nembhard in 2014-2015, and Mr. Schneider is

8

merely accused of informing interested parties that those allegations had been made. Further, the facts as alleged to be true in the First Amended Complaint would have the same effect on the reader or listener: Plaintiff, notwithstanding his self-professed credibility in the cooperative industry, had been the subject of very serious allegations, which he denies, and some groups within the industry have indicated an unwillingness to work with him.

A claim for defamation does not arise from reporting the existence of "mere allegations to be investigated" or even expressing an opinion that the "sources were credible" who made those allegations. *Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995). *See also Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dept. 2011)(alleged defamatory statement was of "an allegation to be investigated, rather than as a fact"); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012). On the face of the pleading, Mr. Schneider is accused of merely reporting to interested parties that he had received allegations warranting further inquiry, something which the First Amended Complaint indicates is true.

Moreover, advising business partners or potential business partners of these allegations would be subject to qualified privilege, based upon common interest, and thus is not actionable, even a false statement was made, unless that statement was made with "actual malice," which means either with "knowledge that the statement was false or reckless disregard of whether it was false or not" or being motivated solely by "spite or ill will". "A qualified privilege exists for communications by a party with a legitimate interest or duty to persons having a corresponding interest or duty in communications promoting legitimate individual, group, or public interests." *Williams v. Boyle*, 72 P.3d 392, 400 (Colo.App.2003); accord *Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo.1986). Where the qualified privilege exists, there is a presumption that the communication was made in good faith without malice. The plaintiff has the burden of rebutting

9

that presumption and may do so by proving that the defendant published the statement with malice; that is, knowing the statement is false or communicating it in reckless disregard for its veracity. *Dominguez*, 727 P.2d at 366; *Williams*, 72 P.3d at 401. "Reckless disregard" in this context means "'a high degree of awareness for probable falsity or serious doubt as to the truth of the statement.'" *Dominguez*, 727 P.2d at 366 (quoting Restatement (Second) of Torts § 600 (1977)). *See also Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)(common interest privilege applies under New York law to "communication made by one person to another upon a subject in which both have an interest."); *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *Foster v. Churchill*, 87 N.Y.2d 744, 752 (1996); and *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 368 (Colo. 2001). There are no factual allegations to remotely suggest that Mr. Schneider was reckless with this information or motivated by spite or ill-will; instead – again, on the face of the pleading – Mr. Schneider was the recipient of allegations against Plaintiff that, by their nature, posed a reputational risk to the businesses and persons with whom Mr. Schneider was affiliated, and he is accused of making a limited disclosure among persons or entities with which there was a clear common interest.

Additionally, the First Amended Complaint fails to plausibly allege that the portions of the "Letter" that Plaintiff claims are false are statements of fact rather than opinion. As stated in the pleading, the context of this "Letter" was Plaintiff and an organization or group of organizations casting blame upon one another related to "underperformance" and what appears to have been a mutually "disappointing experience" between 2013 and 2015. (**Exhibit "A,"** 19, 25, 32-33). Plaintiff claims that the false statements of fact in the "Letter" are that he engaged in "sexual misconduct and sexual hostility," "professional misconduct," "autocratic behavior and sabotage," "inappropriate sharing of internal co-op affairs," "insensitive and racially disrespectful comments

to and about low-income people of color and/or their organizations, particularly in cooperative spaces in Southern Appalachia and New York City," and "deliberately blocking continued cooperation between long term worker co-op partner organizations in the Northeast." (**Exhibit "A,"** ¶ 28).

The statements that Plaintiff claims are false are conclusory and largely subjective assertions, without underlying facts or details. Statements of opinion are constitutionally privileged and thus, not actionable in a defamation case. *See NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 9 (Colo. 1994). Colorado courts look to several factors in determining whether a statement is an opinion. These include: (1) whether the statement contains or implies a verifiable fact; (2) whether the statement is reasonably susceptible to being understood as an actual fact; (3) whether the statement complained of is cautiously phrased in terms of apparency; (4) the entire published statement in context; and (5) all the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed. *See Burns v. McGraw-Hill Broadcasting Co., Inc.*, 659 P.2d 1351, 1360 (Colo. 1983); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). New York courts considered a similar, non-exclusive list of factors: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal to readers or listeners that what is being read or heard is likely to be opinion, not fact. *Goldman v. Reddington*, 417 F. Supp. 3d 163, 172 (E.D.N.Y. 2019).

Here, the import of the Letter is that organizations Plaintiff worked with during the first five years of his ten-year career, prior to returning to school and seeking a fresh start, developed a

11

very negative opinion of him related to, among other things, varied accusations of serious misconduct. Accordingly, it is not clear that this "Letter" included defamatory statements of fact rather than opinion when it was first published; and it certainly should not be understood as constituting Mr. Schneider making a false statement of fact when he received it – in connection with Plaintiff seeking funding and/or promotion through entities with which Mr. Schneider is affiliated – and merely forwarding it and/or discussed it with interested parties.  Plaintiff's Complaint does not, therefore, plausibly state a claim for defamation, and the Second Claim for Relief should be dismissed.

### D. Third Claim for Relief –Plaintiff Fails to State a Claim of Civil Conspiracy

Civil conspiracy is not a stand-alone claim. "In a civil action, conspiracy is a derivative cause of action that is not actionable *per se*. *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) citing *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937) and *Pullen v. Headberg*, 53 Colo. 502, 127 P. 954 (1912). The elements for a civil conspiracy claim require that the underlying acts be "unlawful" and create an independent cause of action. *Id.* Thus, if the Complaint does not allege facts that would create an independent cause of action, the conspiracy claim too must be dismissed. There are five elements required to establish a civil conspiracy in Colorado: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989).

Plaintiff's First Amended Complaint does not plausibly establish all these elements. Plaintiff alleges no specific meeting of the minds and no communications that might form the basis of such an agreement, beyond the conclusory assertion that Defendants sought to remove him from

MSP. Further, the Complaint does not allege plausibly unlawful conduct. As described above, Mr. Schneider is accused of reporting to interested parties that he had received allegations that would likely cause reputational harm to Weiner and CSF and that warranted further inquiry, of providing information requested by Weiner and of putting the person who provided the information in contact with Mr. Weiner so that he could investigate on his own. Even the assertion that Defendants sought to remove Plaintiff from MSP is not, per se, unlawful. Consequently, Plaintiff's civil conspiracy claim fails.

### E. Fourth Claim for Relief –Plaintiff Fails to State a Claim for Tortious Interference with Contract.

In order to establish a claim for tortious interference with contract under Colorado law, the Plaintiff must allege facts demonstrating: (1) a contract existed; (2) the defendant had knowledge of the contract; (3) the defendant interfered and induced the other party to breach the contract; and (4) the plaintiff was injured as a result. *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo.1990). The interference must be intentional and improper. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo.1996) citing Restatement (Second) of Torts § 767 cmt. a. New York law is similar. A claim for tortious interference requires factual allegations by the Plaintiff that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir.2003).

Plaintiff's claims involve first-party rather than third-party business relationships. On the face of the First Amended Complaint, Plaintiff was engaged in fundraising and promotional activity as an agent of MSP and is complaining that someone to whom those activities were

13

directed received negative feedback regarding Plaintiff and reported it to MSP. *See Kirch*, 449 F.3d at 400 ("agents or brokers cannot recover on the basis of interference with the transactions or business relationships for which they are serving as an agent or broker"). Similarly, Defendant Schneider is a member of CSF and a board member of Dazzle LCA's parent company. Plaintiff cannot complain of someone "interfering" with their own businesses. *See Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 623 (Colo.App.1988)(An officer or director of a corporation will not be held personally liable for inducing the corporation's breach of its contract if the officer or director is acting within the scope of his or her official duties.). There are also no allegations in the Complaint that plausibly allege malice as the sole motivation for the alleged disclosure or that the disclosure was through some type of improper means. On the face of the First Amended Complaint, the limited disclosure sought to protect MSP and its principal from the public disclosure of the allegations against Plaintiff and resulting reputational damage. (**Exhibit "A," ¶¶ 55, 58**). Defendant Schneider, with no motive to harm Plaintiff whatsoever and having been generally supportive of Plaintiff's endeavors, received information regarding a significant risk of reputational harm to the entity on whose behalf Plaintiff was acting (MSP), the entities Mr. Schneider was affiliated with, as well as Mr. Schneider himself, should Schneider, CSF and/or Dazzle be publicly associated with Plaintiff. Under the circumstances, Mr. Schneider's response was entirely appropriate, if not less than what may have been justified. Plaintiff's tortious interference with Contract Claim should be dismissed.

**F. Fifth Claim for Relief –Plaintiff Fails to State a Claim for Tortious Interference with Prospective Business Advantage.**

To state a claim for relief for tortious interference with prospective business advantage, Plaintiff must allege facts that would plausibly demonstrate either that Schneider induced or caused a third person not to enter into or continue prospective business relations with Plaintiff or that

14

Schneider prevented Plaintiff from acquiring or continuing the prospective relation. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995), as modified on denial of reh'g (Jan. 16, 1996). Additionally, tortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract. *Id.* In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties. *Id.*, citing Restatement (Second) of Torts § 767 (1979). As discussed above, Schneider, a member of CSF, received information regarding a significant risk of reputational harm to the entity on whose behalf Plaintiff was acting (MSP), the entities Mr. Schneider was affiliated with, as well as Mr. Schneider himself, should Schneider, CSF and/or Dazzle be publicly associated with Plaintiff. He responded in a very limited way, designed to protect his own reputation and those of MSP, CSF and Weiner. That does not constitute tortious interference with prospective business advantage.

## IV. CONCLUSION

WHEREFORE, Defendant Nathan Schneider prays for an Order dismissing Plaintiff's claims against him, pursuant to Fed.R.Civ.P. 12(b)(6).

DATED this 23rd day of June, 2021.

Respectfully submitted,

**PATTERSON RIPPLINGER, P.C.**

*s/ Brian D. Kennedy*
Kevin G. Ripplinger
Brian D. Kennedy
*Attorneys for Defendant Nathan Schneider*
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Telephone: (303) 741-4539
Email: bkennedy@prpclegal.com
kripplinger@prpclegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2021, a true and correct copy of the above and foregoing was served upon the following via CM/ECF:

David D. Lin, Esq.
Michael D. Cilento, Esq.
LEWIS & LIN, LLC.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Michael@iLawco.com
*Attorneys for the Plaintiff*

Marc Litt, Esq.
WACHTEL MISSRY
885 Second Avenue
New York, NY 10017
Tel: (212) 909-9686
mlitt@wmllp.com
*Attorney for Defendant Colorado Solidarity Fund*

Steven D. Zansberg
LAW OFFICE OF STEVEN D. ZANSBERG, LLC
100 Fillmore St., Suite 500
Denver, CO 80202
steve@zansberglaw.com
*Attorney for Defendant Colorado Solidarity Fund*

*s/Brenda Contreras*
Brenda Contreras
bcontreras@prpclegal.com