IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:21-cv-797-WJM-SKC

JOHN RINEHART,

     Plaintiff,

v.

    NATHAN SCHNEIDER, individually and in his capacity as a member of Colorado
Solidarity Fund LLC,
COLORADO SOLIDARITY FUND LLC, a Colorado limited liability company, and
JESSICA GORDON NEMBHARD, an individual,

     Defendants.

---

**REPLY TO PLAINTIFF'S RESPONSE TO SECOND AMENDED MOTION TO
DISMISS FIRST AMENDED COMPLAINT (doc. 52)**

---

Defendant Nathan Schneider, by and through his attorneys, Brian D. Kennedy, Kevin G.

Ripplinger and the law firm of Paterson Ripplinger, P.C., submits the following Reply to Plaintiff's

Response to Second Amended Motion to Dismiss (doc. 52).  Defendant Schneider provides:

## I.   <u>INTRODUCTION</u>

In his Response, Plaintiff maintains that the First Amended Complaint (FAC) plausibly

states a claim for a violation of the Lanham Act, defamation, tortious interference with contract,

tortious interference with prospective business advantage and conspiracy.   Plaintiff's arguments

are based upon a misunderstanding of the Lanham Act, a misreading of Colorado law, and

overstatement of what is actually alleged in the FAC. Contrary to what Plaintiff's Response asserts,

Plaintiff's allegations do not state a claim for a Lanham Act violation, defamation, tortious

1

interference with contract, tortious interference with prospective business advantage, or conspiracy. Plaintiff's First Complaint should be dismissed.

## II.  ARGUMENT AND AUTHORITY

### A.  First Claim for Relief –Plaintiff Fails to State a Plausible Claim Under the Lanham Act

The allegations in the FAC have no connection to consumer fraud and are plainly not the types of claims the Lanham Act was meant to address. Plaintiff alleges that he was fundraising for a start-up entity or that he was involved in business-to-business transactions. The parties are not competitors, and there are no non-conclusory factual allegations to support such a Lanham Act claim.

Plaintiff's Response suggests that the FAC seeks to invoke Section (1)(b) of the Act. This provision relates to false statements made in connection with advertising and promotion of goods and services. To constitute commercial advertising or promotion, a "statement must be (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services;… (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public," and, possibly, that (4) the parties are commercial competitors. *Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003)(internal quotation marks omitted) citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) and *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994). "[T]o have standing for a false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 873 (10th Cir.1995).  "[H]arm[ ] to the plaintiff's ability to compete with the defendant" constitutes such an injury. *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir.1995).  There is no way to read Plaintiff's FAC as plausibly alleging either

that Mr. Schneider is a business competitor or that his alleged conduct harms Plaintiff's ability to compete with him.

In his Response, Plaintiff contends that the FAC plausibly alleges that Plaintiff and Defendant Schneider are competitors, "due to the nature of the industry and particular market that they are in, as well as because of the fact that Mr. Rinehart and MSPWC's success was quickly securing funding and resources in that market, which could otherwise be steered by Defendants...." Pl. Rsp., p. 3.  Plaintiff goes on to say that this is because the co-op business "is a small and 'insular' industry, where relatively few people and organizations compete for relatively few resources and successes, including government funding, organizational viability, board positions, consulting contracts, and employment positions."  Pl. Rsp., p. 4.  This argument is flawed in multiple respects.  First, with respect to Defendant Schneider specifically, it is supported by two paragraphs in the FAC, ¶¶ 60 and 61 (the FAC is attached to Defendant Schneider's Second Amended Motion to Dismiss as **Exhibit A**).  These paragraphs assert that Defendant Schneider is a member of CSF, and they assert, in broad, conclusory terms, that he actively works in the co-op industry, performing various, unspecified project management and contract work for different, unspecified organizations.  They do not allege that Defendant Schneider is involved in the management of CSF –and he is not.  They do not even allege any specific roles or types of services where Plaintiff and Defendant Schneider might compete, aside from noting that, like every two human beings, Plaintiff and Schneider compete for resources.  The particular resources are left undefined.  Even the allegation that Plaintiff and Defendant Rinehart are both authors who write of have written about the co-op industry does not support the idea that they are competitors.  There is no allegation that they compete for space in the same journals or that in any other way the business is a zero-sum game –because it is not.  Even assuming the very limited, non-conclusory

allegations to be true, they do not plausibly establish that Plaintiff and Defendant Rinehart are competitors within the meaning of the act.  They certainly do not indicate that they compete in the consumer arena, which is what the Lanham Act addresses.  The bald, conclusory allegation that Plaintiff and Schneider are competitors is simply not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

Plaintiff next maintains that the FAC plausibly alleges commercial advertising, promotion and speech.  The glaring problem with this argument is that the FAC does not allege any such speech.  The core of the concept of commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66, 103 S. Ct. 2875, 2880 (1983)(citing *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825).  That clearly does not apply here, as the speech alleged in the FAC does not propose any transaction at all. Plaintiff has alleged, in conclusory terms, that Defendant Schneider had an economic motivation for informing Jason Weiner of the allegations made against Plaintiff.  Even if the Court were to consider that allegation, despite the holding in *Iqbal*, the decisional law makes it clear that someone's having an economic motive alone does not make something commercial speech.  *See Bolger*, 463 U.S. at 67, 103 S. Ct. at 2880.

Furthermore, the FAC does not allege anything that could reasonably be characterized as advertising or promotion.  Indeed, the only specific communication alleged concerning Defendant Schneider are that he communicated the information provided by Defendant Nembhard to Jason Weiner and to an unnamed person at Dazzle Limited Cooperative Association.  Two contacts do not constitute advertising or promotion, and the communication in question does not fit within the

concepts of advertising or promotion.  The cases cited by Plaintiff, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1385-86 (5th Cir. 1996) and *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) do not support a different conclusion.  In those cases, communications involved contacts with 15 percent and 33 percent of a company's potential customers, respectively.  Nothing in the FAC suggests anything like that occurred here. Further, the information conveyed did not address the quality of nature of Plaintiff's services; it addressed a potential reputational risk.  This simply is not a Lanham Act case, and Plaintiff's Lanham Act claim should be dismissed.

### B. Second Claim for Relief –Plaintiff Fails to State a Plausible Claim for Defamation

Based upon the statements contained in the FAC, it is undisputed that allegations were, in fact, made against Plaintiff by Defendant Nembhard in 2014-2015, and Mr. Schneider is merely accused of informing interested parties that those allegations had been made. Further, the facts as alleged to be true in the FAC would have the same effect on the reader or listener: Plaintiff, notwithstanding his self-professed credibility in the cooperative industry, had been the subject of very serious allegations, which he denies, and some groups within the industry have indicated an unwillingness to work with him.

A claim for defamation does not arise from reporting the existence of "mere allegations to be investigated" or even expressing an opinion that the "sources were credible" who made those allegations. *Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995). *See also Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dept. 2011); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012). Defendant Schneider is accused of reporting to interested parties that he had received allegations warranting further inquiry, something which the FAC clearly indicates is true.

In his Response, Plaintiff contends that this is not Colorado law and cites *Quigley v. Rosenthal*, 327 F.3d 1044 (10th Cir. 2003) for that proposition.  As an initial matter, the *Quigley* case primarily addresses the concept of matters of public concern, something not raised in Defendant Schneider's Motion.  It also addresses the related concept of the fair report doctrine, which affords a privilege to reports of in-court proceedings, if they are fair and substantially correct.  In *Quigley*, the defendant held a press conference where he made detailed statements about the Quigleys' alleged misconduct, drawing heavily upon a complaint filed in a civil action. Where the description suggested that a court had found the allegations to be true but where no action had actually been taken by any court at the time of the report, the court held that the fair report doctrine did not provide a privilege.  *Id.* at 1062.  The cases cited by Defendant Schneider address a different concept, the idea that a party can inform someone of allegations that require investigation without becoming liable for defamation.  The holding in *Quigley* is inapposite. Importantly, the FAC does not allege that Defendant Schneider claimed the allegations in the Letter were true, that he believed them to be true or anything of the sort.  Rather, he is alleged to have passed the Letter on to persons who might be affected by the existence of the allegations, regardless of whether they were true, and who would have a reason and need to investigate the allegations.  That is not defamation.

Moreover, advising business partners or potential business partners of these allegations would be subject to qualified privilege, based upon common interest, and thus is not actionable, unless that statement was made with "actual malice," which means either with "knowledge that the statement was false or reckless disregard of whether it was false or not" or being motivated solely by "spite or ill will".  *See Williams v. Boyle*, 72 P.3d 392, 400 (Colo.App.2003); accord *Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo.1986). There are no factual allegations to suggest

that Defendant Schneider was reckless or motivated by spite; instead, he was the recipient of allegations against Plaintiff that, by their nature, posed a substantial reputational risk to the businesses and persons with whom Plaintiff was affiliated, including one in which Schneider was a member (CSF), and Defendant Schneider is accused of making a limited disclosure among persons or entities with which there was a clear common interest.

In his Response, Plaintiff argues that there is no common interest, relying upon an incorrect and artificially narrow reading of Colorado law. Plaintiff alleges that he formed MSP with Jason Weiner, who helped MSP with fundraising. FAC, ¶ 43. Plaintiff alleges that he made a fundraising pitch to CSF. FAC, ¶ 47. He also alleges that Defendant Schneider was a member of CSF. FAC, ¶¶ 49, 52. The FAC further alleges that Defendant Schneider made a limited disclosure of the Letter or information in the Letter to Mr. Weiner and to a member of CSF, a person and an organization who would likely suffer severe reputational damage from the allegations in the Letter, were the allegations to become public and were the people and organizations to be publicly affiliated with Plaintiff, regardless of whether the allegations were true. FAC, ¶¶ 51-52. The FAC further alleges that Defendant Schneider contacted Dazzle Limited Cooperative Association, another business considering working with Plaintiff, about the letter, though it does not include any details of what information might have been conveyed, when or how. FAC, ¶ 57. Dazzle too would invariably suffer severe reputational damage from the allegations in the Letter, were they to become public and were they to be publicly affiliated with Plaintiff. This situation falls clearly within the common interest privilege.

Contrary to Plaintiff's assertions, Colorado defines the privilege broadly. "A qualified privilege exists for communications by a party with a legitimate interest or duty to persons having a corresponding interest or duty in communications promoting legitimate individual, group, or

public interests." *Williams*, 72 P.3d at 400–01.  Colorado courts have found multiple relationships subject to the qualified privilege, including: a memorandum by faculty members setting forth their reasons for requesting that a department head be reassigned, *Dominguez*, 727 P.2d at 365; an employer's communication to an employee of its reasons for discharging that employee, *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1346 (Colo. 1988); and the report of a social worker of unsubstantiated allegations of sexual abuse by a person at a daycare facility, *Wigger v. McKee*, 809 P.2d 999 (Colo.App.1990).  The key is a legitimate relationship and common interest.  That clearly exists here.

In his Response, Plaintiff also suggests that it is not necessary for him to plead facts showing actual malice. Pl. Rsp., pp. 8-9. Rather, he contends that showing of express malice will suffice.  That position is contrary to the decisional law.  For instance, in *Williams*, the Colorado Court of Appeals required actual malice, noting that "plaintiff was required to prove that defendant knew the statement was false…." *Williams*, 72 P.3d at 401.  *See also McIntyre v. Jones*, 194 P.3d 519, 529 (Colo. App. 2008) (holding that plaintiff can show common interest privilege was abused only "by proving that the defendant published the statement with malice; that is, knowing the statement is false or communicating it in reckless disregard for its veracity… [and] 'Reckless disregard' in this context means 'a high degree of awareness for probable falsity or serious doubt as to the truth of the statement.'" ) (citations omitted). Numerous federal courts have noted the same requirement and have required that a complaint meet the *Twombly* and *Iqbal* standards for alleging actual malice.  *See e.g. Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (citation omitted) (Plaintiff must "plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice."). Bare allegations, such as those contained in the FAC here, do not suffice. *Id.* at 544; *see also*

*Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (rejecting argument that such allegations "need only be articulated in the most general terms"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice" (citations omitted)).   The fact that Plaintiff has not alleged facts to plausibly establish actual malice (and cannot because there was no actual malice) is fatal to his defamation claims.

### C.   Fourth Claim for Relief –Plaintiff Fails to State a Claim for Tortious Interference with Contract.

In his Motion, Defendant Schneider also pointed out that the FAC does not plausibly allege facts supporting the elements of claims for tortious interference with contract.  In his Response, Plaintiff seeks to carve out the first party relationships and instead focus only on the supposed agreement that he had with MSP that he would receive the first paid position.  Even looking at the claim in that fashion, the FAC fails to state a claim for tortious interference with contract.

In order to establish a claim for tortious interference with contract under Colorado law, Plaintiff must allege facts demonstrating, *inter alia*, that the defendant had knowledge of the contract and that the defendant interfered and induced the other party to breach the contract. *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo.1990). The interference must be intentional and improper. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo.1996) citing Restatement (Second) of Torts § 767 cmt. a.  Despite Plaintiff's assertions to the contrary in his Response, the FAC itself alleges no facts from which the Court could conclude that it is plausible Defendant Schneider knew of the arrangement between MSP and Plaintiff concerning a future paid position.  Indeed, how could he have known about such a private arrangement? Absent well pleaded facts establishing knowledge of this contract, Plaintiff's claim must be dismissed.

There are also no allegations in the FAC that plausibly allege malice as the sole motivation for the alleged disclosure or that the disclosure was through improper means. On the face of the FAC, the limited disclosure sought to protect MSP and its principal from the public disclosure of the allegations against Plaintiff and resulting reputational damage. (FAC, ¶¶ 55, 58). Defendant Schneider, with no motive to harm Plaintiff, received information regarding a significant risk of reputational harm to the entity on whose behalf Plaintiff was acting (MSP), the entities Mr. Schneider was affiliated with, as well as Mr. Schneider himself, should Schneider, CSF and/or Dazzle be publicly associated with Plaintiff. Under the circumstances, Mr. Schneider's response was entirely appropriate, if not less than what may have been justified. Plaintiff's tortious interference with Contract Claim should be dismissed.

**D. Fifth Claim for Relief –Plaintiff Fails to State a Claim for Tortious Interference with Prospective Business Advantage.**

Plaintiff's claim for tortious interference with prospective business advantage should also be dismissed. To state a claim for relief for tortious interference with prospective business advantage, Plaintiff must allege facts that would plausibly demonstrate intentional and improper interference preventing formation of a contract. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995). In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties. *Id.*, citing Restatement (Second) of Torts § 767 (1979). Plaintiff has not alleged facts that would demonstrate intentional and improper interference. As discussed

10

above, Schneider, a member of CSF, received information regarding a significant risk of reputational harm to the entity on whose behalf Plaintiff was acting (MSP), the entities Mr. Schneider was affiliated with, as well as Mr. Schneider himself, should Schneider, CSF and/or Dazzle be publicly associated with Plaintiff. Schneider responded in a very limited way, designed to protect his own reputation and those of MSP, CSF and Weiner.  That does not constitute tortious interference with prospective business advantage.

### III. CONCLUSION

WHEREFORE, Defendant Nathan Schneider prays for an Order dismissing Plaintiff's claims against him, pursuant to Fed.R.Civ.P. 12(b)(6).

DATED this 2nd day of August, 2021.

Respectfully submitted,

**PATTERSON RIPPLINGER, P.C.**

*s/ Brian D. Kennedy*
Kevin G. Ripplinger
Brian D. Kennedy
*Attorneys for Defendant Nathan Schneider*
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Telephone: (303) 741-4539
Email: bkennedy@prpclegal.com
        kripplinger@prpclegal.com

11

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this 2nd day of August, 2021, a true and correct copy of the above and foregoing was served upon the following via CM/ECF:

David D. Lin, Esq.
Michael D. Cilento, Esq.
LEWIS & LIN, LLC.
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Michael@iLawco.com
*Attorneys for the Plaintiff*

Marc Litt, Esq.
WACHTEL MISSRY
885 Second Avenue
New York, NY 10017
Tel: (212) 909-9686
mlitt@wmllp.com
*Attorney for Defendant Colorado Solidarity Fund*

Steven D. Zansberg
LAW OFFICE OF STEVEN D. ZANSBERG, LLC
100 Fillmore St., Suite 500
Denver, CO 80202
steve@zansberglaw.com
*Attorney for Defendant Colorado Solidarity Fund*

*s/Brenda Contreras*
Brenda Contreras
bcontreras@prpclegal.com

12